**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
MOBILE DIVISION**

| | | |
|---|---|---|
| **LOTTIE THOMPSON-GROVES**<br>**and WILLIAM GROVES,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO.** |
| | ) | **1:20-cv-61** |
| **SARALAND LOOP ROAD, LLC,** | ) | |
| **BURKE'S OUTLET STORES, LLC,** | ) | |
| **FAMILY DOLLAR STORES OF** | ) | |
| **ALABAMA, LLC, GPF, INC., and** | ) | |
| **ROUSE'S ENTERPRISES, LLC,** | ) | |
| **Defendants.** | ) | |

## I.    COMPLAINT

Plaintiffs, Lottie Thompson-Groves and William Groves (hereinafter, "Plaintiffs" or "Mrs. Thompson-Groves" or "Mr. Groves"), file this Title III, Americans with Disabilities Act (hereinafter, "ADA") action against Defendants, Saraland Loop Road, LLC, Burke's Outlet Stores, LLC, Family Dollar Stores of Alabama, LLC, GPF, Inc., and Rouses Enterprises, LLC (hereinafter, "Defendants" or "Loop Road", "Burke's", "Family Dollar", "GPF", and "Rouses"), pursuant to 42 U.S.C. §12181 *et seq*. In Count One of Plaintiffs' Complaint, Plaintiffs seek to enjoin Defendants to remove architectural barriers from Defendants' facilities. In Count Two of Plaintiffs' Complaint, Plaintiffs seek to enjoin Defendants to maintain policies, practices, and procedures necessary to maintain Defendants' facility free of architectural barriers both now and once the architectural barriers are removed from Defendants' facilities. In Count Three of Plaintiffs' Complaint, Plaintiffs seek to enjoin Defendants use of Defendants' facilities to provide full and equal enjoyment of Defendants' facilities to individuals with disabilities. Count Two of Plaintiffs' Complaint and Count Three of Plaintiffs' Complaint seek independent relief in addition to the removal of architectural barriers from Defendants' facilities. In Count Four of Plaintiffs'

Complaint, Plaintiffs' seek to enjoin Defendants' failure to design and construct Defendants' facilities to ADA compliance.

## II.    JURISDICTION, PARTIES, AND ARTICLE III STANDING

1.    This action is for declaratory relief and injunctive relief, pursuant to 42 U.S.C. §12181 *et seq*., Title III of the ADA and implementing regulations; therefore, this Court is vested with original jurisdiction under 28 U.S.C. §1331 and §1343.

2.    Venue is proper in this Court, the United States District Court for the Southern District of Alabama, pursuant to Title 28, U.S.C. §1391 and the Local Rules of the United States District Court for the Southern District of Alabama.

3.    Mrs. Thompson-Groves suffers from tremors, stenosis of the neck and spine, and bulging disks; as a result, she experiences balance issues, difficulty walking and bending, shaking, limited hand dexterity and hand function. The extent of Mrs. Thompson-Groves' physical impairments limits her ability to care for herself, perform manual tasks, walk, stand, lift, and bend, all of which are major life activities pursuant to 42 U.S.C. §12102(2)(A). Therefore, Mrs. Thompson-Groves is disabled pursuant to the ADA, in that she suffers a physical impairment substantially limiting one or more major life activities. 42 U.S.C. §12102; *see also*, 28 C.F.R. §36.104.

4.    Mr. Groves has neuropathy, which substantially limits the use of his legs and feet, creates back problems, and severely limits the use of his right hand. These medical problems limit his ability to walk, stand, lift, bend, perform manual tasks, all of which are major life activities pursuant to 42 U.S.C. §12102(2)(A). Therefore, Mr. Groves is disabled pursuant to the ADA, in that he suffers a physical impairment substantially limiting one or more major life activities. 42 U.S.C. §12102; *see also*, 28 C.F.R. §36.104.

5.      Defendants are limited liability companies that are both registered to conduct business and are conducting business within the State of Alabama sufficient to create both general and specific *in personam* jurisdiction. Upon information and belief, Loop Road owns the real property and improvements located at 100 Saraland Loop, Saraland, Alabama 36571. Upon information and belief, Burke's operates the real property and improvements at Burke's located at 96 Saraland Loop, Saraland, Alabama 36571. Upon information and belief, Family Dollar operates the real property and improvements at Family Dollar located at 124 Saraland Loop, Saraland, Alabama 36571. Upon information and belief, GPF operates the real property and improvements at GPF located at 120 Saraland Loop, Saraland, Alabama 36571. Upon information and belief, Rouses operates the real property and improvements at Rouses located at 112 Saraland Loop, Saraland, Alabama 36571. Defendants' facilities are places of public accommodation pursuant to 42 U.S.C. §12181(7).

6.      All events giving rise to this lawsuit occurred in the Southern District of Alabama and Defendants are citizens thereof.

7.      Plaintiffs live 2.7 miles, or approximately six minutes, from the shopping center and stores.  They have been to each of these stores and the shopping center numerous times in the past as part of shopping for various day to day needs, and definitely will continue to return, not only because of the common day to day needs the stores and shopping center provide for, but also because they are so close to home, and they go by these stores in everyday travel. Mrs. Thompson-Groves and Mr. Groves cannot specify each and every exact date of return because they have not planned every trip for the rest of their lives. Such specific planning is not necessary to invoke the ADA. *See*, *e.g.*, *Parr v. L&L Drive Inn Restaurant*, 96 F. Supp.2d 1065, 1079 (D. Haw. 2000); *Segal v. Rickey's Restaurant and Lounge, Inc.*, No. 11-61766-cn (S.D. Fla. 2012) ("Specification

as to date and time of return to this public accommodation is impossible due to the nature of the event. Fast food patrons visit such restaurants at the spur of the moment."). Nevertheless, Plaintiffs definitely intend to return to Defendants' facilities.

8.      Plaintiffs have been denied full and equal enjoyment of Defendants' public accommodations on the basis of Plaintiffs' disabilities because of the barriers described below in paragraphs twenty-four (24), twenty-five (25), twenty-six (26), twenty-seven (27), and twenty-eight (28) below and throughout the Complaint.

9.      Plaintiffs have Article III standing to pursue this action because of the following: (1) Plaintiffs are disabled, pursuant to the statutory and regulatory definition, (2) Defendants' facilities are places of public accommodation pursuant to the statutory and regulatory definition, (3) Plaintiffs have suffered a concrete and particularized injury by being denied access to Defendants' public accommodations, and by Defendants' denial of the use of the public accommodations for Plaintiffs' full and equal enjoyment, as described throughout the Complaint, and (4) because of these injuries, there exists a genuine threat of imminent future injury, as described in paragraph twenty-two (22) below.

### III.      PLAINTIFFS' CLAIMS

### ADA, TITLE III

10.      Congress enacted Title III of the ADA, 42 U.S.C. §12181 *et seq.* on or about July 26, 1990. Commercial enterprises were provided one and a half years from enactment of the statute to implement the requirements. The effective date of Title III of the ADA was January 26, 1992. (42 U.S.C. §12181; 20 C.F.R. §36.508(A); *see also*, §36.304).

11.     Pursuant to 42 U.S.C. §12181(7) and 28 C.F.R. §36.104, Defendants' facilities are places of public accommodation in that they are stores providing goods and services to the public. Therefore, the public accommodations are covered by the ADA and must comply with the ADA.

**COUNT ONE**
**VIOLATION OF THE ADA, TITLE III**
**42 U.S.C. §12182(b)(2)(A)(iv)**
**Architectural Barriers**

**Defendants' Existing Facilities are Subject to the 2010 ADA Design Standards for the Portions of the Facilities Addressed in this Complaint**

12.     Plaintiffs are informed and believe based on publicly available information that Loop Road located at 100 Saraland Loop, Saraland, Alabama 36571 was first constructed in 1980 and underwent alterations and/or improvements in 1998.

13.     Plaintiffs are informed and believe based on publicly available information that Burke's located at 96 Saraland Loop, Saraland, Alabama 36571 underwent alterations and/or improvements as recently as 2019.

14.     Plaintiffs are informed and believe based on publicly available information that Family Dollar located at 124 Saraland Loop, Saraland, Alabama 36571 underwent alterations and/or improvements in 1999.

15.     Plaintiffs are informed and believe based on publicly available information that GPF located at 120 Saraland Loop, Saraland, Alabama 36571 was first constructed in 1980.

16.     Plaintiffs are informed and believe based on publicly available information that Rouse located at 112 Saraland Loop, Saraland, Alabama 36571 underwent alterations and/or improvements in 2014.

17.     The ADA was enacted requiring that facilities constructed prior to January 26, 1992, are considered an existing facility, such that those facilities must remove architectural

barriers where such removal is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv). All alterations made to existing facilities after January 26, 1992, and all new construction after January 26, 1993, must be readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs. 42 U.S.C. § 12183(a) - (b). 28 C.F.R. §36.402. "Readily accessible to and usable by . . ." is the new construction standard, which requires compliance with the Department of Justice (hereinafter, "DOJ") standards. 42 U.S.C. § 12183(a)(1); 28 C.F.R. §36.406. The only defense for failing to provide readily accessible and usable buildings constructed under the new construction standards is if the design and construction of the building to be readily accessible and usable is structurally impracticable. 42 U.S.C. §12183(a)(1). The structural impracticability defense applies only in rare circumstances of extraordinary terrain. 28 C.F.R. §36.401(c). "Readily accessible to and usable by . . ." is also the alterations standard. 42 U.S.C. §12183(a)(2). Alterations must be made to the maximum extent feasible.  42 U.S.C.  §12183(a)(2); 28 C.F.R. §36.402. An alteration is a change to a place of public accommodation or commercial facility that affects or could affect the usability of the facility or any part thereof. 28 C.F.R. §36.402(b).

18.     New construction and alterations must comply with either the DOJ's 1991 Standards for Accessible Design or the 2010 Standards for Accessible Design. 28 C.F.R. §36.406 establishes whether the 1991 Standards for Accessible Design or 2010 Standards for Accessible Design apply: New construction and alterations subject to §36.401 or §36.402 shall comply with the 1991 Standards if the date when the last application for a building permit or permit extension is certified to be complete by a state, county, or local government is before September 15, 2010, or if no permit is required, if the start of physical construction or alterations occurs before September 15, 2010. 28 C.F.R. §36.406(a)(1). New construction and alterations subject to §36.401 or §36.402 shall comply either with the 1991 Standards or with the 2010 Standards if the date

when the last application for a building permit or permit extension is certified to be complete by a state, county, or local government is on or after September 15, 2010, and before March 15, 2012, or if no permit is required, if the start of physical construction or alterations occurs on or after September 15, 2010, and before March 15, 2012. 28 C.F.R. §36.406(a)(2). New construction and alterations subject to §36.401 or §36.402 shall comply with the 2010 Standards if the date when the last application for a building permit or permit extension is certified to be complete by a state, county, or local government is on or after March 15, 2012, or if no permit is required, if the start of physical construction or alterations occurs on or after March 15, 2012. Where the facility does not comply with the 1991 Standards, the 2010 Standards are applicable. *See* 28 C.F.R. §36.406(5)(ii) which states, "Newly constructed or altered facilities or elements covered by §36.401 or §36.402 that were constructed or altered before March 15, 2012 and that do not comply with the 1991 Standards shall, on or after March 15, 2012, be made accessible in accordance with the 2010 Standards."

19.     For the architectural barriers at issue in this case, the 2010 Standards for Accessible Design are applicable.

### Plaintiffs' Concrete and Particularized Standing to Pursue an Injunction

20.     Defendants have discriminated, and continue to discriminate, against Plaintiffs, and others who are similarly situated, by denying full and equal access to, and full and equal enjoyment of goods, services, facilities, privileges, advantages, and/or accommodations at Defendants' facilities in derogation of 42 U.S.C. §12101 *et seq*., and as prohibited by 42 U.S.C. §12182 *et seq*. As new construction, the building must be readily accessible to and usable by individuals with disabilities. 42 U.S.C. § 12183 (a) - (b).  Defendants' failure to remove the existing barriers thus violates 42 U.S.C. §12182(b)(2)(A)(iv), which requires removal of architectural barriers.

21.     Prior to the filing of this lawsuit, Plaintiffs were denied full and safe access to all of the benefits, accommodations, and services offered to individuals without disabilities within and about Defendants' public accommodations. Plaintiffs' access was inhibited by each of the described architectural barriers detailed in the Complaint, which remain at the public accommodations in violation of the ADA. Because of the foregoing, Plaintiffs have suffered an injury-in-fact in precisely the manner and form that the ADA was enacted to guard against.

22.     Plaintiffs have definite plans to return to the facilities in the future, as described in paragraph seven (7) above. Plaintiffs will return to the facilities, not only to enjoy the goods and services at the facilities, but also to see if Defendants have repaired the architectural barriers and changed their policies, practices, and procedures. Plaintiffs will continue to do so even when the facilities are repaired. Plaintiffs would not want to stop going when the facilities are repaired, and the practices are modified. The barriers are not created just by construction issues; instead, many of the barriers are created by human activity, from the way Defendants' workers at the public accommodations use the architectural elements of the public accommodations. The barriers created by human activity will need to be reviewed and maintained forever, to be sure Defendants' management and workers continuously act in a manner that does not create barriers. Absent remedial action by Defendants, Plaintiffs will continue to encounter the architectural barriers, and the discriminatory policies, practices, and procedures described herein; as a result, be discriminated against by Defendants on the basis of Plaintiffs' disabilities. The Eleventh Circuit held in *Houston v. Marod Supermarkets*, 733 F.3d 1323 (11th Cir. 2013), when architectural barriers have not been remedied ". . . there is a 100% likelihood that plaintiff . . . will suffer the alleged injury again when plaintiff returns to the store." Due to the definiteness of Plaintiffs' plan

to continue visiting the subject facilities, there exists a genuine threat of imminent future injury. Plaintiffs' stated intent to return is plausible.

**Architectural Barriers**

23.     Pursuant to the mandates of 42 U.S.C. §12134(a), on July 26, 1991, the DOJ, Office of the Attorney General, promulgated Federal Regulations to implement the requirements of the ADA. 28 C.F.R. Part 36.

**LOOP ROAD**

24.     Plaintiffs have been from the parking lot to the entrances at 100 Saraland Loop, Saraland, Alabama 36571 and have encountered, in particular but not limited to, the following barriers:

(1) Defendant provides a parking area with parking spaces that have routes connecting the parking spaces to the entrances of the public accommodations for able-bodied individuals, but fails to provide the same level of access by providing an ADA accessible route from accessible parking spaces to accessible entrances for non-able-bodied individuals, which segregates and relegates individuals with disabilities to inferior benefits of the goods and services provided at Defendant's places of public accommodation, which includes but is not limited to, the following failures of Defendant:

   a.  Defendant fails to maintain the parking area and associated accessible routes in conformance with the ADA Standards for Accessible Design in all the ways that are required to be readily accessible to and usable by disabled individuals, which includes but is not limited to, parking spaces failing to be located on the shortest accessible route to the entrances, which has the discriminatory effect of rendering the parking spaces and associated elements as unusable by disabled individuals;

b.  The parking area fails to maintain the required amount of accessible parking spaces, including associated accessible access aisles, in operable condition by conforming with the ADA Standards for Accessible Design so that the level accessible parking spaces measure 96 inches wide minimum with adjoining compliant access aisles that measure 60 inches wide minimum and connect to an accessible routes to accessible entrances of the public accommodations;

c.  The parking area fails to maintain the required amount of accessible parking spaces, including associated accessible access aisles, in operable condition by conforming with the ADA Standards for Accessible Design so that the accessible parking spaces adjacent access aisles extend the full length of the parking spaces and are marked so as to discourage parking in the access aisles, which renders the access aisles unusable by the disabled;

d.  The parking area fails to maintain the required amount of accessible parking spaces, including adjoining access aisles, in operable condition by conforming with the ADA Standards for Accessible Design so that the parking spaces adjacent access aisles do not overlap the vehicular way;

e.  The parking area fails to maintain the required amount of accessible parking spaces, including adjoining access aisles, in operable condition by conforming with the ADA Standards for Accessible Design so that the parking spaces are identified with accessibility signage including the international symbol of accessibility that is mounted 60 inches minimum above the finish floor or ground surface measured to the bottom of the sign;

f.  The parking area fails to maintain the required amount of accessible parking spaces, including adjoining access aisles, in operable condition by conforming with the ADA Standards for Accessible Design so that the parking spaces and adjacent access aisles are designed or otherwise maintained in a way so that when cars and vans, when parked, cannot obstruct the required clear width of adjacent accessible routes and render the parking spaces as unusable by the disabled;

(2) Defendant provides a parking area with parking spaces that have routes connecting the parking spaces to the entrances of the public accommodations for able-bodied individuals, but fails to provide the same level of access by providing an ADA accessible route from accessible van parking spaces to accessible entrances for non-able-bodied individuals, which segregates and relegates individuals with disabilities to inferior benefits of the goods and services provided at Defendant's places of public accommodation, which includes but is not limited to, the following failures of Defendant:

a.  Defendant fails to maintain the parking area and associated accessible route in conformance with the ADA Standards for Accessible Design in all the ways that are required to be readily accessible to and usable by disabled individuals, which includes but is not limited to, accessible van parking spaces failing to be located on the shortest accessible route to accessible entrances, which has the discriminatory effect of rendering the parking spaces and associated elements as unusable by disabled individuals;

b.  The parking area fails to maintain the required amount of accessible van accessible parking spaces, including associated access aisles, in operable condition by conforming with the ADA Standards for Accessible Design so that the van parking

spaces measure 132 inches wide minimum with adjoining compliant access aisles that measure 60 inches wide minimum, or alternatively a 96 inch wide space with an adjoining 96 inch wide access aisle, and connects to adjoining accessible routes to accessible entrances of the public accommodations;

c.  The parking area fails to maintain the required amount of accessible van parking spaces, including associated access aisles, in operable condition by conforming with the ADA Standards for Accessible Design so that the van parking spaces adjacent access aisles extend the full length of the parking spaces and are marked so as to discourage parking in the access aisles, which renders the aisles unusable by the disabled;

d.  The parking area fails to maintain the required amount of accessible van parking spaces, including adjoining access aisles, in operable condition by conforming with the ADA Standards for Accessible Design so that the parking spaces adjacent access aisles do not overlap the vehicular way;

e.  The parking area fails to maintain the required amount of accessible van parking spaces, including adjoining access aisles, in operable condition by conforming with the ADA Standards for Accessible Design so that the parking spaces are identified with accessibility signage, including the international symbol of accessibility that is mounted 60 inches minimum above the finish floor or ground surface measured to the bottom of the sign;

f.  The parking area fails to maintain the required amount of accessible van parking spaces, including adjoining access aisles, in operable condition by conforming with the ADA Standards for Accessible Design so that the parking spaces and adjacent

access aisles are designed or otherwise maintained in a way so that when cars and vans, when parked, cannot obstruct the required clear width of adjacent accessible routes and render the parking spaces as unusable by the disabled;

(3) Defendant provides a parking area with parking spaces that have routes connecting the parking spaces to the entrances of the establishments for able-bodied individuals, but fails to provide the same level of access by providing an ADA accessible route from accessible parking spaces to accessible entrances for non-able-bodied individuals, which segregates and relegates individuals with disabilities to inferior benefits of the goods and services provided at Defendant's places of public accommodation, which includes but is not limited to, the following failures of Defendant:

a. Defendant fails to maintain the parking area and associated accessible route in conformance with the ADA Standards for Accessible Design in all the ways that are required to be readily accessible to and usable by disabled individuals, which includes but is not limited to, providing all of the necessary components on the ADA accessible route to the entrance, including without limitation, ramps, walking surfaces, and other associated elements, which has the discriminatory effect of rendering the parking spaces and associated elements as unusable by disabled individuals;

b. The accessible route fails to maintain a ramp and associated components in operable condition by conforming with the ADA Standards for Accessible Design so that the adjacent surfaces at transitions at curb ramps to walks, gutters, and streets are at the same level;

c.  The accessible route fails to maintain a ramp and associated components in operable condition by conforming with the ADA Standards for Accessible Design so that the running slope is not steeper than 1:12;

d.  The accessible route fails to maintain a ramp and associated components in operable condition by conforming with the ADA Standards for Accessible Design so that the cross slope is not steeper than 1:48;

e.  The accessible route fails to maintain a ramp and associated components in operable condition by conforming with the ADA Standards for Accessible Design so that there are no changes in level other than the running slope and cross slope;

f.  The accessible route fails to maintain a ramp and associated components in operable condition by conforming with the ADA Standards for Accessible Design in all the ways that are required to be usable by the disabled, which includes but is not limited to, providing a ramp that is 36 inches wide minimum with a level landing at the top and bottom of the ramp measure 60 inches long minimum and at least as wide as the ramp.

**<u>BURKE'S</u>**

25.  Plaintiffs have been from the parking lot to the entrance; from the entrance to the toilet room; the toilet room itself; from the entrance to the dressing room; the dressing room itself; throughout circulation paths and accessible routes, and service areas, paths of travel, and in particular but not limited to, all of which are specifically described below. Moreover, Defendant's facility located at 96 Saraland Loop, Saraland, Alabama 36571 violates the ADA in the toilet room, in the dressing room, and in particular but not limited to:

a. The baby changing station, when down, obstructs the clear floor space at the water closet;

b. The side wall grab bar fails to be 42 inches (1065 mm) long minimum, located 12 inches (305 mm) maximum from the rear wall and extending 54 inches (1370 mm) minimum from the rear wall;

c. The space between the grab bar and projecting objects above fails to be 12 inches (305 mm) minimum;

d. The toilet paper dispenser fails to be 7 inches (180 mm) minimum and 9 inches (230 mm) maximum in front of the water closet measured to the centerline of the dispenser;

e. The rear wall grab bar fails to be 36 inches (915 mm) long minimum and extend from the centerline of the water closet 12 inches (305 mm) minimum on one side and 24 inches (610 mm) minimum on the other side;

f. There is not at least one lavatory with a mirror that is maintained in a usable condition so that the bottom reflecting surface of the mirror measures a maximum of 40 inches above the finished floor;

g. The "caution wet floor" sign obstructs the maneuvering clearance at the water closet;

h. The dressing room fails to have a 60 inches minimum turning space complying with 304 provided within the room.

**FAMILY DOLLAR**

26. Plaintiffs have been from the parking lot to the entrance; from the entrance to the toilet room; the toilet room itself; throughout circulation paths and accessible routes, and service

areas, paths of travel, and in particular but not limited to, all of which are specifically described below. Moreover, Defendant's facility located at 124 Saraland Loop, Saraland, Alabama 36571 violates the ADA in the toilet room, and in particular but not limited to:

(1) Defendant provides a toilet room for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to the experience afforded to individuals without disabilities, which includes but is not limited to, the following failures of Defendant:

   a. The toilet room fails to provide accessibility signage, including the international symbol of accessibility, identifying the restroom as accessible;

   b. The toilet room does not provide the required maneuvering clearance at the doorway to maneuver inside and outside of the toilet room;

   c. The toilet room does not provide operable door hardware and locking mechanism that is usable by the disabled; the current operable door hardware and locking mechanism require tight grasping, twisting, and/or pinching of the wrist;

   d. The light switch fails to be maintained in a usable condition so that the light switch measures the required height for unobstructed and/or obstructed reach ranges;

   e. The coat hook fails to be maintained in a usable condition so that the coat hook measures the required height for unobstructed and/or obstructed reach ranges;

   f. The soap dispenser fails to be maintained in a usable condition so that the soap dispenser measures the required height for unobstructed and/or obstructed reach ranges;

g. The side wall grab bar fails to be 42 inches (1065 mm) long minimum, located 12 inches (305 mm) maximum from the rear wall and extending 54 inches (1370 mm) minimum from the rear wall;

h. The rear wall grab bar fails to be 36 inches (915 mm) long minimum and extend from the centerline of the water closet 12 inches (305 mm) minimum on one side and 24 inches (610 mm) minimum on the other side;

i. The sink obstructs the required clearance around the water closet.

(2) Defendant provides an accessible route to and throughout the aisles for able-bodied individuals but fails to provide an ADA accessible route to and throughout the aisles for individuals with disabilities, which prohibits individuals with disabilities from the full and equal opportunity to access the goods and services at Defendant's store.

a. Defendant fails to maintain the aisles' accessible routes in conformance with the ADA Standards for Accessible Design in all the ways that are required to be readily accessible to and usable by disabled individuals, which includes but is not limited to, maintaining at least one accessible route that connects the facility entrance with all accessible spaces and elements within the facility which are otherwise connected by a circulation path;

b. Defendant fails to maintain the aisles' accessible route in operable condition by conforming with the ADA Standards for Accessible Design so that the required clear walking surfaces and its associated elements are not rendered unusable by the disabled as a result of obstructions in the clear floor walking surface;

c. Defendant fails to maintain the aisles' accessible route in conformance with the ADA Standards for Accessible Design in all the ways that are required to be readily

accessible to and usable by disabled individuals, which includes but is not limited to, maintaining the accessible routes' clear width at turns and/or passing spaces, which has the discriminatory effects of rendering the aisles, including its goods, as unusable by the disabled;

d.   Defendant fails to have or otherwise fails to enforce its policies, practices, or procedures on maintaining in operable working condition the features of the purported accessible route to and throughout the aisles so that the goods and services are readily accessible to and usable by individuals with disabilities;

e.   Defendant has ineffective policies, practices, or procedures that ensures the purported accessible route is readily accessible to and usable by individuals with disabilities so that no individual with a disability is excluded, denied services, segregated, or otherwise treated differently than individuals without disabilities.

**GPF**

27.   Plaintiffs have been from the parking lot to the entrance; from the entrance to the toilet room; the toilet room itself; from the entrance to the sales and service counter; the sales and service counter itself; from the entrance to the seating; the seating itself; throughout circulation paths and accessible routes, and service areas, paths of travel, and in particular but not limited to, all of which are specifically described below. Moreover, Defendant's facility located at 120 Saraland Loop, Saraland, Alabama 36571 violates the ADA in the toilet room, in the sales and service counter, at the seating, and in particular but not limited to:

(1)   Defendant provides a toilet room for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service,

facility, privilege, advantage, or accommodation that is equal to the experience afforded to individuals without disabilities, which includes but is not limited to, the following failures of Defendant:

a. The toilet room fails to provide accessibility signage, including the international symbol of accessibility, identifying the restroom as accessible;

b. The toilet room does not provide operable door hardware and locking mechanism that is usable by the disabled; the current operable door hardware and locking mechanism require tight grasping, twisting, and/or pinching of the wrist;

c. The light switch fails to be maintained in a usable condition so that the light switch measures the required height for unobstructed and/or obstructed reach ranges;

d. The side wall grab bar fails to be 42 inches (1065 mm) long minimum, located 12 inches (305 mm) maximum from the rear wall and extending 54 inches (1370 mm) minimum from the rear wall;

e. The space between the grab bar and projecting objects above fails to be 12 inches (305 mm) minimum;

f. The paper towel dispenser fails to be maintained in a usable condition so that the paper towel dispenser measures the required height for unobstructed and/or obstructed reach ranges;

g. The sink obstructs the required clearance around the water closet;

h. The centerline of the water closet fails to be 16 inches (405 mm) minimum to 18 inches (455 mm) maximum from the side wall or partition;

i. The sink fails to be installed with the front of the higher of the rim or counter surface 34 inches (865 mm) maximum above the finish floor or ground;

     j.   There is not at least one lavatory with a mirror that is maintained in a usable condition so that the bottom reflecting surface of the mirror measures a maximum of 40 inches above the finished floor;

(2) Defendant provides sales and service counters for able-bodied individuals to transact business and otherwise receive services that are provided at each counter but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to individuals without disabilities, which includes but is not limited to, the following failures of Defendant:

     a.   There is not at least one of each type of sales and service counter that is maintained in conformance with the ADA Standards for Accessible Design in all the ways that are required to be readily accessible to and usable by disabled individuals which has the discriminatory effects of rendering the counter, its associated elements, and services offered at the counter as unusable by disabled individuals;

     b.   There is not at least one of each type of sales and service counter that is maintained in operable condition by conforming with the ADA Standards for Accessible Design so that the accessible counter and its associated elements are located adjacent to a walking surface complying with 403;

     c.   There is not  at least one of each type of sales and service counter that is maintained in operable condition by conforming with the ADA Standards for Accessible Design so that a portion of the counter surface that is 36 inches long minimum and 36 inches high maximum above the finish floor is readily usable by disabled individuals which includes maintaining a clear floor or ground space complying

with 305 positioned for either a parallel approach adjacent to the 36 inch minimum length of counter, or, alternatively, a portion of the counter surface that is 30 inches long minimum and 36 inches high maximum with knee and toe space complying with 306 provided under the counter and a clear floor or ground space complying with 305 positioned for a forward approach to the counter;

d.  There is not at least one of each type of sales and service counter that is maintained in operable condition with the ADA Standards for Accessible Design in all the ways that are required to be readily accessible to and usable by disabled individuals which includes but is not limited to maintaining the clear counter surface free of obstructions or any other clutter that could have the discriminatory effects of rendering the counter and its associated benefits and services as unusable by the disabled;

e.  There is not at least one of each type of sales and service counter that is maintained in operable condition with the ADA Standards for Accessible Design so that accessible counter extends the same depth as the non-accessible portion of the counter;

f.  There is not at least one of each type of sales and service counter that is maintained in operable condition with the ADA Standards for Accessible Design so that a credit card payment terminal is positioned or otherwise maintained in a readily accessible to and independently usable location at the accessible counter which has the discriminatory effects in practice of affording disabled individuals an unequal opportunity to independently transact business in the same manner as non-disabled individuals;

g.  Defendant fails to maintain the accessible features of the sales and service counter that are required to be readily accessible to and usable by individuals with disabilities;

(3) Defendant provides several types of dining surfaces disbursed throughout the establishment for the consumption of food or drink at the indoor dining area, which includes booth dining surfaces and table dining surfaces, but fails to maintain that same level of service to individuals with disabilities, which segregates and relegates individuals with disabilities to inferior benefits of the goods and services provided at Defendant's place of public accommodation, which includes but is not limited to, the following failures of Defendant:

a.  There is not at least 5% of each type of seating spaces and standing spaces disbursed throughout the indoor dining area that is maintained in conformance with the ADA Standards for Accessible Design in all the ways that are required to be readily accessible to and usable by disabled individuals which includes but is not limited to maintaining an accessible route to the dining surfaces which has the discriminatory effects of rendering the indoor dining area seating spaces and its associated elements as unusable by disabled individuals;

b.  There is not at least 5% of each type of seating spaces and standing spaces disbursed throughout the indoor dining area that is maintained in operable condition with the ADA Standards for Accessible Design so that the seating spaces maintain the required t-shaped and/or circular turning clear floor space;

c.  There is not at least 5% of each type of seating spaces and standing spaces disbursed throughout the indoor dining area that is maintained in operable condition with the

22

ADA Standards for Accessible Design so that the seating spaces maintain the required 30x48 inches of clear floor space that is positioned for a forward approach to the dining surface;

d.   There is not at least 5% of each type of seating spaces and standing spaces disbursed throughout the indoor dining area that is maintained in operable condition with the ADA Standards for Accessible Design so that the tops of the dining surfaces measure 28 inches minimum and 34 inches maximum above the finished which includes the required 30 inches of clear dining surface so that the surface does not prohibit disabled individuals from being equally afforded the opportunity to sit and enjoy the goods and services at the establishment.

**ROUSES**

28.    Plaintiffs have been from the parking lot to the entrance; from the entrance to the toilet room; the toilet room itself; throughout circulation paths and accessible routes, and service areas, paths of travel, and in particular but not limited to, all of which are specifically described below. Moreover, Defendant's facility located at 112 Saraland Loop, Saraland, Alabama 36571 violates the ADA in the toilet room, and in particular but not limited to:

a.   The accessibility signage, including the international symbol of accessibility, fails to be located along the latch side of the door;

b.   The accessible stall door fails to be self-closing;

c.   The coat hook fails to be maintained in a usable condition so that the coat hook measures the required height for unobstructed and/or obstructed reach ranges;

d.   The flush control fails to be located on the open side of the water closet;

e.  The side wall grab bar fails to be 42 inches (1065 mm) long minimum, located 12 inches (305 mm) maximum from the rear wall and extending 54 inches (1370 mm) minimum from the rear wall;

f.  The space between the grab bar and projecting objects above fails to be 12 inches (305 mm) minimum;

g.  The rear wall grab bar fails to be 36 inches (915 mm) long minimum and extend from the centerline of the water closet 12 inches (305 mm) minimum on one side and 24 inches (610 mm) minimum on the other side;

h.  The toilet paper dispenser fails to be 7 inches (180 mm) minimum and 9 inches (230 mm) maximum in front of the water closet measured to the centerline of the dispenser;

i.  The paper towel dispenser fails to be maintained in a usable condition so that the paper towel dispenser measures the required height for unobstructed and/or obstructed reach ranges.

29.  To date, the barriers to access and other violations of the ADA still exist and have not been remedied or altered in such a way as to effectuate compliance with the provisions of the ADA.

30.  Plaintiffs have been obligated to retain the undersigned counsel for the filing and prosecution of this action. Plaintiffs are entitled to have Plaintiffs' reasonable attorneys' fees, costs, and expenses paid by Defendants pursuant to 42 U.S.C. §12205.

31.  Pursuant to 42 U.S.C. §12188, this Court is vested with the authority to grant Plaintiffs' injunctive relief, including an Order to alter the discriminating facilities to make the facilities readily accessible to, and usable by, individuals with disabilities to the extent required by

the ADA, and closing the facilities until the requisite modifications are completed, and to further Order Defendants to modify the policies, practices, and procedures to provide equal use of the facilities, services, and benefits to disabled individuals.

**COUNT TWO**
**VIOLATION OF THE ADA, TITLE III**
**42 U.S.C. §12182(b)(2)(A)(ii)**
**Policies, Practices, and Procedures Denying Equal Benefits**

**ADA, Title III Prohibits Other Discrimination in Addition to Architectural Barriers**

32.     Plaintiffs incorporate paragraphs 1-31 above.

33.     The ADA, Title III, provides a private right of action for "any person who is being subjected to discrimination on the basis of disability in violation of" Title III. 42 U.S.C. §12182(a)(1).

34.     The ADA, Title III, specifically makes it unlawful to provide individuals with disabilities with an unequal benefit, and to relegate individuals with disabilities to a different or separate benefit. 42 U.S.C. §12182(b)(1)(A)(ii)-(iii); 28 C.F.R. §36.202(b)-(c). In other words, the disabled must receive equal benefits as the nondisabled. Further, 28 C.F.R. §302(b) requires that goods, services, and accommodations be provided to individuals with disabilities in "the most integrated setting appropriate." 42 U.S.C. § 12182(b)(1)(B); 28 C.F.R. §36.203(a). Similarly, the Preamble in addition to recognizing that persons who use wheelchairs and mobility aids have been forced to sit apart from family and friends, also recognizes that persons who use wheelchairs and mobility aids historically have been provided "segregated accommodations" compared to non-disabled individuals; thus, relegating persons who use wheelchairs "to the status of second-class citizens." *See* 28 C.F.R. pt. 36, App. B, at 631-633, 651 (2000) (discussion of §36.308; §36.203).

35.     Congress enacted the ADA in light of its findings that "individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion,

the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities." 42 U.S.C. §12101(a)(5).

36.     To address this broad range of discrimination in the context of public accommodations, Congress enacted ADA, Title III, which provides in part: "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. §12182.

37.     By its clear text, ADA, Title III requires a public accommodation to provide individuals with disabilities more than simple physical access. Removal of architectural barriers as required by Count One of this Complaint is but one component of compliance with ADA, Title III. Congress recognized that "individuals with disabilities continually encounter various forms of discrimination" including not only barriers to physical access, but also other forms of exclusion and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities. 42 U.S.C. 12101(a)(5); *see also*, H.R. Rep. No. 485, Pt. 2, 101st Cong., 2d Sess. 35-36 (1990) ("lack of physical access to facilities" was only one of several "major areas of discrimination that need to be addressed"); H.R. Rep. No. 485, Pt. 3, 101st Cong., 2d Sess. 54 (1990) ("It is not sufficient to only make facilities accessible and usable; this title prohibits, as well, discrimination in the provision of programs and activities conducted by the public accommodation.").

38.     For that reason, the ADA applies not only to barriers to physical access to places of public accommodation, but also to any policy, practice, or procedure that operates to deprive or

diminish disabled individuals' full and equal enjoyment of the privileges and services offered by the public accommodations to the public. 42 U.S.C. § 12182. Thus, public accommodations may not have a policy, practice, or procedure that excludes individuals with disabilities from services. 42 U.S.C. §12182(b)(2)(A)(ii). The Eleventh Circuit held in *Rendon v. Valleycrest Prod., Ltd.*, 294 F.3d 1279, (11th Cir. 2002) that:

> A reading of the plain and unambiguous statutory language at issue reveals that the definition of discrimination provided in Title III covers both tangible barriers (emphasis added), that is, physical and architectural barriers that would prevent a disabled person from entering an accommodation's facilities and accessing its goods, services and privileges, see 42 U.S.C. § 12182(b)(2)(A)(iv), and intangible barriers (emphasis added), such as eligibility requirements and screening rules or discriminatory policies and procedures that restrict a disabled person's ability to enjoy the Defendants entity's goods, services and privileges.

**Defendants' Failed Practices and Lack of Policies Are Discriminatory**

39.     Pursuant to 42 U.S.C. §12182(b)(2)(A)(ii) discrimination includes:

> [A] failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations.

40.     Accordingly, a place of public accommodation must modify a policy or practice that has the consequence of, or tends to deny, access to goods or services to the disabled. Similarly, a place of public accommodation must not have a policy or practice that "has a discriminatory effect in practice" of preventing disabled individuals from realizing the full and equal enjoyment of the goods and services the public accommodation offers to potential customers. *Nat'l Fed'n of the Blind v. Scribd Inc.*, 97 F.Supp.3d 565 (D. Vt. 2015).

41. As detailed below, Defendants have failed to make reasonable modifications in the policies, practices, and procedures that are necessary to afford the goods, services, facilities, privileges, advantages, or accommodations to individuals with restricted mobility. By failing to take such efforts that may be necessary to ensure that no individual with a disability is excluded, Defendants denied services, segregated, or otherwise treated Plaintiffs differently than individuals who are not disabled. Pursuant to 42 U.S.C. §12182(b)(2)(A), Defendants have discriminated against Plaintiffs. Defendants will continue that discrimination forever until enjoined as Plaintiffs request. The discrimination is described more particularly in the following paragraphs.

42. Defendants either have no policies, practices, and procedures to remove architectural barriers or else do not abide by them. The architectural barriers previously identified in Count One establish that Defendants have failed to create, adopt, and/or implement ADA, Title III compliance policies, procedures, and practices as to architectural barriers.

43. Defendants' use of Defendants' facilities, and the practices at Defendants' facilities creates barriers and in so doing denies Plaintiffs the full and equal enjoyment of Defendants' facilities. Those practices include:

a) Saraland Loop Road makes the parking area inaccessible for use by the disabled by failing to provide ADA accessible parking with connecting accessible routes to the establishments from the parking lot, which means that Plaintiffs are forced to depend on assistance from a third party to get into Defendants' facilities, whereas the non-disabled conveniently access the establishments without the need of third party assistance;

b) Burke's, Family Dollar, GPF, and Rouse make the toilet rooms inaccessible at the facilities;

c)  GPF makes the sales and service counter inaccessible;

d)  Burke's makes the dressing room inaccessible;

e)  GPF makes the dining area inaccessible;

f)  Defendants fail to provide a place for the disabled to enjoy the goods and services like able-bodied people can;

g)  Defendants' policies, practices, and procedures are conducted without regard to disabled individuals.

44.    As the continuing architectural barriers and the failure to provide full and equal use of Defendants' facilities establishes, Defendants have no policies, practices, or procedures, or else have failed to implement them, to ensure that any removal of architectural barriers is permanent. 42 U.S.C. §12182(b)(2)(a)(iv) and (v).

45.    As the continuing architectural barriers and the failure to provide full and equal use of Defendants' facilities establishes, Defendants' existing practice is both in effect and/or explicitly to remediate ADA, Title III architectural barriers only upon demand by the disabled.

46.    As the continuing architectural barriers and the failure to provide full and equal use of Defendants' facilities establishes, Defendants have no policies, practices, and procedures or else have failed to create, implement, and maintain policies and procedures to ensure individuals with disabilities are able to have the same experience at the facilities as individuals without disabilities, 42 U.S.C. §12182(b)(1)(A); in particular, the opportunity to have full and equal access to all of the goods, services, privileges, advantages, or accommodations of Defendants' facilities, as described above in detail.

47.    As the continuing architectural barriers and the failure to provide full and equal use

of the facilities establishes, Defendants have failed to create, implement, and maintain a policy of complying with ADA building design standards and regulations.

48.     To date, Defendants' discriminating policies, practices, and/or procedures have not been reasonably modified to afford goods, services, facilities, privileges, advantages, or other accommodations to individuals with disabilities.

49.     A reasonable modification in the policies, practices, and procedures described above will not fundamentally alter the nature of such goods, services, facilities, privileges, advantages, and accommodations. Plaintiffs hereby demand that Defendants both create and adopt a corporate practice and policy that Defendants (1) will fully comply with Title III, ADA, and all implementing regulations so that architectural barriers identified above are permanently removed from Defendants' facilities consistent with the ADA; (2) Defendants will provide the disabled, including those with mobility limitations full and equal use and enjoyment of Defendants' facilities; and (3) Defendants will modify the practice of making ADA, Title III architectural barrier remediations only upon demand by the disabled.

50.     As pled above, Defendants own and operate the real properties and improvements in which Defendants' public accommodations are located; therefore, pursuant to 42 U.S.C. §12182, are responsible for creating, implementing, and maintaining policies, practices and procedures, as alleged above.

51.     The ADA is over twenty-five (25) years old. Defendants know Defendants must comply with the ADA, Title III. The ADA, Title III requires modifications in policies, practices, and procedures to comply with the ADA, as pled above in the statute. 42 U.S.C. §12182(b)(2)(A)(ii).

52.     By this Complaint, Plaintiffs provide sufficient notice of Plaintiffs' demand for an

alteration in Defendants' policies, practices, and procedures.

53.     Plaintiffs have been obligated to retain the undersigned counsel for the filing and prosecution of this action. Plaintiffs are entitled to have Plaintiffs' reasonable attorneys' fees, costs, and expenses paid by Defendants pursuant to 42 U.S.C. § 12205.

54.     Pursuant to 42 U.S.C. §12188, this Court is authorized to enjoin these illegal policies, practices, and procedures.

## COUNT THREE
## VIOLATION OF THE ADA, TITLE III
### Denial of Full and Equal Enjoyment

55.     Plaintiffs incorporate paragraphs 1-54 above.

56.     42 U.S.C. §12182(a) provides:

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

57.     Congress enacted the ADA upon finding, among other things, that "society has tended to isolate and segregate individuals with disabilities" and that such forms for discrimination continue to be a "serious and pervasive social problem." 42 U.S.C. §12101(a)(2).

58.     Congress also found that: "individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities", 42 U.S.C. §12101(a)(5); "the nation's proper goals regarding individuals with disabilities are to assure equality of opportunity, full participation, independent living, and economic self-sufficiency for such individuals;" 42 U.S.C. §12101(a)(7).

Congress even found that: "the continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous, and costs the United States billions of dollars in unnecessary expenses resulting from dependency and nonproductivity." 42 U.S.C. §12101(a)(8).

59.     In response to these findings, Congress explicitly stated that the purpose of the ADA is to provide "a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities" and "clear, strong, consistent, enforceable standards addressed discrimination against individuals with disabilities." 42 U.S.C. §12101(b)(1)-(2).

60.     The ADA provides, *inter alia*, that it is discriminatory to subject an individual or class of individuals on the basis of a disability "to a denial of the opportunity of the individual or class to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity." 42 U.S.C. §12182(a)(i).

61.     The ADA further provides that it is discriminatory "to afford an individual or class of individuals, on the basis of a disability . . . with the opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is not equal to that afforded to other individuals." 42 U.S.C. §12182(a)(ii).

62.     Congress enacted the ADA in light of its findings that "individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser services,

programs, activities, benefits, jobs, or other opportunities." 42 U.S.C. §12101(a)(5). Defendants'

acts and omissions alleged herein are in violation of the ADA, 42 U.S.C. §12101, *et seq*., and the

regulations promulgated thereunder.

63.     To address this broad range of discrimination in the context of public

accommodations, Congress enacted Title III, which by its clear text, requires a public

accommodation to provide individuals with disabilities more than simple physical access.

Congress recognized that "individuals with disabilities continually encounter various forms of

discrimination*"* including not only barriers to physical access, but also other forms of exclusion

and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities. 42

U.S.C. 12101(a)(5); *see also* H.R. Rep. No. 485, Pt. 2, 101st Cong., 2d Sess. 35-36 (1990) ("lack

of physical access to facilities" was only one of several "major areas of discrimination that need

to be addressed"); H.R. Rep. No. 485, Pt. 3, 101st Cong., 2d Sess. 54 (1990) ("It is not sufficient to

only make facilities accessible and usable; this title prohibits, as well, discrimination in the

provision of programs and activities conducted by the public accommodation.").

64.     For that reason, the ADA applies not only to barriers to physical access to business

locations, but also to any policy, practice, or procedure that operates to deprive or diminish disabled

individuals' full and equal enjoyment of the privileges and services offered by the public

accommodation to the public. 42 U.S.C. 12182. Thus, a public accommodation may not have a

policy, practice or procedure that excludes individuals with disabilities from services. 42 U.S.C.

§12182(b)(1)(A)(i).

65.     The keystone for this analysis is Defendants must start by considering how the

facility is used by non-disabled guests and then take reasonable steps to provide disabled guests

with a like experience. *Spector v.  Norwegian Cruise Line Ltd.,* 545 U.S. 119, 128–29, 125 S.Ct.

2169, 162 L . E d . 2d 97 (2005); *see also*, *Baughman v.  Walt Disney World Company*, 685 F.3d 1131, 1135 (9th Cir. 2012).

66.     Plaintiffs were denied full and equal access to Defendants' public accommodations. Plaintiffs specifically and definitely want to return to Defendants' public accommodations. More specifically, Plaintiffs want to be afforded the same level of service that is offered to non-disabled individuals, which Defendants have failed to provide to Plaintiffs as follows: Defendants failed to provide an accessible parking area and accessible route for disabled individuals, which means Plaintiffs cannot park, cannot independently get out of the car, cannot independently travel from the parking area into the public accommodations, cannot determine if there is a usable parking space, and must determine by trial and error how Plaintiffs are to park and move into the public accommodations; Defendants' failed to provide accessible sales and service counters; Defendants' failed to provide accessible dressing rooms; Defendants' failed to provide accessible toilet rooms; Defendants' continued failure to maintain ADA accessibility as an integral part of the highest possible experience that non-disabled individuals get to independently enjoy has segregated or otherwise treated Plaintiffs, and others similarly situated, differently, in that, Defendants' public accommodations make Plaintiffs dependent on family or an independent third party, which is not the same experience that Defendants afford to non-disabled individuals and all the foregoing failures by Defendants inhibited Plaintiffs from having the same experience that non-disabled individuals have when at Defendants' public accommodations.

67.     In the Preamble to the Title III regulation, the DOJ recognized that mobility impaired persons including persons in wheelchairs should have the same opportunities to enjoy the goods and services and other similar events of public accommodation with their families and friends, just as other non-disabled individuals do. The DOJ further recognized that providing

segregated accommodations and services relegates persons with disabilities to the status of second-class citizens. 28 C.F.R. pt. 36, App. B, §36.203.

68.    The ADA specifically makes it unlawful to provide individuals with disabilities with an unequal benefit, and to relegate individuals with disabilities to a "different or separate" benefit. 42 U.S.C. §12182(b)(1)(A)(ii)-(iii); 28 C.F.R. §36.202(b)-(c). Further, 28 C.F.R. §302(b) requires that goods, services, and accommodations be provided to individuals with disabilities in "the most integrated setting appropriate." 42 U.S.C. §12182(b)(1)(B); 28 C.F.R. §36.203(a). Similarly, the Preamble in addition to recognizing that persons who use wheelchairs have been forced to sit apart from family and friends, also recognizes that persons who use wheelchairs historically have been provided inferior seating and segregated accommodations compared to non-disabled individuals; thus, relegating persons who use wheelchairs "to the status of second-class citizens." *See* 28 C.F.R. pt. 36, App. B, at 631-633, 651 (2000) (discussion of §36.308; §36.203).

69.    Thus, Defendants' use of the accessible features constitutes statutory discrimination in violation of the ADA, because Defendants have segregated and separated disabled individuals from non-disabled individuals. "The goal is to eradicate the invisibility of the handicapped. Separate-but-equal services do not accomplish this central goal and should be rejected." *H.R. Rep. No. 101-485(III),* at 50*, 1990 U.S.C.C.A.N* at 473*.* The ADA provides a broad mandate to "eliminate discrimination against disabled individuals, and to integrate those individuals into the economic and social mainstream of American life." *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 675; 121 S.Ct. 1879, 149 L.Ed.2d 904 (2001) (quoting H.R.Rep. No. 101-485, pt. 2, p.50 (1990), reprinted in 1990 U.S.C.C.A.N. 303, 332).

70.    Defendants discriminated against Plaintiffs by denying Plaintiffs "full and equal enjoyment" and use of the goods, services, facilities, privileges and accommodations of

Defendants' facilities during each visit. Each incident of deterrence denied Plaintiffs an equal "opportunity to participate in or benefit from the goods, services, facility, privilege, advantage, or accommodations" of Defendants' public accommodations.

71.     Defendants' conduct and Defendants' unequal treatment to Plaintiffs constitutes continuous violations of the ADA and absent a Court ordered injunction from doing so, Defendants will continue to treat Plaintiffs, and others similarly situated, unequally.

72.     Defendants' failure to maintain the accessible features that are required to be readily accessible to and usable by individuals with disabilities constitutes continuous discrimination and absent a Court ordered injunction, Defendants will continue to not maintain the required accessible  features  at  Defendants' facilities. 28 C.F.R. §36.211(a).

73.     Plaintiffs have been obligated to retain the undersigned counsel for the filing and prosecution of this action. Plaintiffs are entitled to have Plaintiffs' reasonable attorneys' fees, costs, and expenses paid by Defendants pursuant to 42 U.S.C. §12205.

74.     Pursuant to 42 U.S.C. §12188, this Court is authorized to enjoin these illegal acts of Defendants.

## COUNT FOUR
## VIOLATION OF THE ADA, TITLE III
## 42 U.S.C. §12183(a)(1)
## Failure to design and construct Defendants' facilities for ADA compliance

75.     Plaintiffs incorporate paragraphs 1-74 above.

76.     42 U.S.C. §12183(a)(1) provides:

> [Discrimination includes] a failure to design and construct facilities for first occupancy later than 30 months after July 26, 1990, that are readily accessible to and usable by individuals with disabilities, except where an entity can demonstrate that it is structurally impracticable to meet the requirements of such subsection in accordance with standards set forth or incorporated

by reference in regulations issued under this subchapter.

77.     Congress passed the ADA in part because "historically, society has tended to isolate and segregate individuals with disabilities, and such forms of discrimination . . . continue to be a serious and pervasive social problem." 42 U.S.C. § 12101(a)(2). Congress found that this discrimination included "segregation and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities." *Id*. § 12101(a)(5). In its Preamble to the Title III regulation, the DOJ recognized that persons in wheelchairs should have the same opportunities to enjoy the goods and services and other similar events of a public accommodation with their families and friends, just as other non-disabled individuals do. The DOJ further recognized that providing segregated accommodations and services relegates persons with disabilities to the status of second-class citizens. 28 C.F.R. pt. 36, App. B, § 36.203.

78.     To eliminate such segregation Congress enacted the requirement that facilities be "readily accessible to and usable by individuals with disabilities." This very requirement is intended to enable individuals with disabilities "to get to, enter and use a facility." H.R. Rep. No. 101- 485(III), at 499-500 (1990). It requires "a high degree of convenient accessibility," *id.*, as well as access to the same services that are provided to members of the general public. "For new construction and alterations, the purpose is to ensure that the service offered to persons with disabilities is equal to the service offered to others." *Id*.

79.     As the legislative history makes clear, the ADA is geared to the future with the goal being that, over time, access will be the rule rather than the exception. Thus, the ADA only requires modest expenditures to provide access in existing facilities, while requiring all new construction to be accessible. H.R. Rep. 485, Part 3, 101st Cong., 2d Sess. 63 (1990).

80.     To realize its goal of a fully accessible future, Congress required that all newly constructed facilities be designed and constructed according to architectural standards set by the

Attorney General. 42 U.S.C. §12183(a), §12186(b). Those Standards for Accessible Design are incorporated into the DOJ's regulations implementing Title III of the ADA. 28 C.F.R. Part 36, Appendix.

81.     The Standards set architectural requirements for newly constructed buildings that apply to all areas of the facilities, from parking areas, interior walkways and entrances, common areas, seating, toilet rooms, and sales and service areas.

82.     Defendants own and operate the real properties and improvements in which Defendants' facilities are located and are directly involved in the designing and/or construction of the public accommodations in this litigation for first occupancy after January 1993.

83.     Defendants were and are required to design and construct the public accommodations to be "readily accessible to and usable by individuals with disabilities." Defendants violated the statute by failing to design and construct Defendants' facilities to be readily accessible to and usable by individuals with disabilities including individuals who use wheelchairs. Defendants further violated the statute by failing to design and construct Defendants' facilities in compliance with the ADA during planned alterations as described throughout Plaintiffs' Complaint.

84.     To date, Defendants' discriminating actions continue.

85.     Plaintiffs' have been obligated to retain the undersigned counsel for the filing and prosecution of this action. Plaintiffs are entitled to have Plaintiffs' reasonable attorneys' fees, costs, and expenses paid by Defendants pursuant to 42 U.S.C. §12205.

86.     Pursuant to 42 U.S.C. §12188, this Court is authorized to enjoin these illegal actions by Defendants.

**WHEREFORE**, premises considered, Plaintiffs demand judgment against Defendants on Counts One through Four and request the following injunctive and declaratory relief:

1. That the Court declare that the properties and businesses owned and operated by Defendants as well as all Defendants' illegal actions described herein violate the ADA, as more particularly described above;

2. That the Court enter an Order enjoining Defendants to alter Defendants' facilities to make Defendants' facilities accessible to and usable by individuals with disabilities to the full extent required by Title III of the ADA, to comply with 42 U.S.C. §12182(b)(2)(A)(iv) and its implementing regulations, as stated in Count One;

3. That the Court enter an Order, in accordance with Count Two, directing Defendants to modify the policies, practices, and procedures both to remedy the numerous ADA violations outlined above, in violation of 42 U.S.C. §12182(b)(2)(A)(ii), and to permanently enjoin Defendants to make the business practices consistent with ADA, Title III in the future;

4. That the Court enter an Order directing Defendants to provide Plaintiffs full and equal access both to the experience and to the use of the public accommodations, and further Order Defendants to maintain the required accessible features at the public accommodations so that Plaintiffs and others similarly situated are offered the same experience that is offered to non-disabled individuals, as stated in Count Three;

5. That the Court enter an Order directing Defendants to evaluate and neutralize the policies, practices, and procedures towards individuals with disabilities for such reasonable time so as to allow Defendants to undertake and complete corrective procedures;

6.    That the Court award reasonable attorneys' fees, costs, including expert fees, and other expenses of suit, to Plaintiffs;

7.    That the Court enjoin Defendants to remediate the public accommodations to the proper level of accessibility required for the design and construction of the facilities for first occupancy, as stated in Count Four; and

8.    That the Court award such other, further, and different relief as the Court deems necessary, just, and proper.

Respectfully Submitted, this the 5th day of February 2020.

*Cassie E. Taylor*

Cassie E. Taylor
AL Bar #8297-N67R
ADA Group LLC
4001 Carmichael Road, Suite 570
Montgomery, Alabama 36106
Telephone: 334-356-5314
Facsimile: 334-819-4032
Email: CET@ADA-Firm.com
*Attorney for Plaintiff*

L. Landis Sexton
AL Bar # 5057-N71L
ADA Group LLC
4001 Carmichael Road, Suite 570
Montgomery, Alabama 36106
Telephone: 334-819-4030
Facsimile: 334-819-4032
Email: LLS@ADA-Firm.com
*Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

This is to certify that I have this day filed with the Clerk of Court the aforementioned

Complaint for service of process by USPS mail or electronic mail, postage prepaid and properly

addressed this 5th day of February 2020 to the following:

Saraland Loop Road, LLC
c/o Registered Agent: Blacksher Whitespunner
3201 Dauphin Street
Mobile, Alabama 36606

Burke's Outlet Stores, LLC
c/o Registered Agent: Corporate Creations Network
6 Office Park Circle #100
Mountain Brook, Alabama 35223

Family Dollar Stores of Alabama, LLC
c/o Registered Agent: Corporation Service Company Inc
641 South Lawrence Street
Montgomery, Alabama 36104

GPF, Inc.
c/o Registered Agent: Sandra Fuqua
5015 Moffat Road
Mobile, Alabama 36618

Rouse's Enterprises, LLC
c/o Registered Agent: Corporation Service Company Inc
641 South Lawrence Street
Montgomery, Alabama 36104

_Cassie E. Taylor_
Cassie E. Taylor
*Attorney for Plaintiff*